PEOPLE *ex rel.* WESTERN UNION TEL. CO. *v.* DOLAN *et al.,* Assessors, (three cases.)

*(Supreme Court, General Term, Third Department. July 7, 1890.)*

TAXATION—ASSESSMENT—REVIEW—CERTIORARI.
     *Certiorari* will not lie under Laws N. Y. 1880, c. 269, to review an assessment alleged to be erroneous by reason of overvaluation where the party aggrieved has

failed to apply to the assessors for relief while the assessment roll is still under their control, by appearing before the board on grievance day, and objecting to the assessment as prescribed by Laws N. Y. 1857, c. 536. LEARNED, P. J., dissenting.

Appeal from special term, Rensselaer county.

*Certiorari* brought by the Western Union Telegraph Company against Edward Dolan and others as assessors of the city of Troy.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*King & King,* for relator.  *R. A. Parmenter,* for respondents.

MAYHAM, J.  This is an appeal from a judgment of this court at special term dismissing and quashing a writ of *certiorari* brought by the relator to review and set aside an assessment made by the respondents as general assessors of the city of Troy, in 1885, on relator's property in Troy.  The assessment roll for that year was filed by the assessors with the city comptroller on the 26th day of February, 1886, to which was attached the oath of the assessors, in the form required by chapter 201 of the Laws of 1885, sworn to on that day.  The writ of *certiorari* was allowed on the 13th of March, 1886, and on that day filed in the Rensselaer county clerk's office, and served on the respondents.  The learned trial judge found that the property of the relator, including the property of the other telegraph companies owned or controlled by it in the city of Troy, was assessed at the aggregate sum of $11,700 for taxation in the city of Troy for 1885; that the aggregate assessed valuation of all the taxable property in that city for 1885 was $46,600,932; and that the rate of taxation was $1.24 on each $100, and that the total tax assessed against that city for 1885 was $575,434.53, of which the relator's share was $145.08.  He also found that the relator was a domestic corporation with a capital of about $81,000,000, with a business office in the city of Troy, with connection forming a part of an extensive system of transmitting information and news by telegraph, the earnings of which at that office during the year 1885 were upwards of $30,000, exclusive of the rental of seven private wires at $2,000 each a year; that no application was made by, or on behalf of, the relators to the respondents, before the completion of the assessment roll for the year 1885, for any reduction of the valuation of its property on said roll; that for the year 1885 the relator neglected to make and deliver to the general assessors of the city of Troy, or any of them, a written statement of its property in said city, as required by section 2, tit. 4, c. 13, pt. 1, of the Revised Statutes; that it does not appear from the evidence that the relator's property is taxed or assessed out of proportion to other real estate in said city.  On the hearing the relator gave evidence tending to show the actual cost of the material and construction of its telegraph property in the city of Troy, and the witness upon that subject estimated the cost at $4,087.20, and now claims that the assessment is excessive and erroneous, because it is largely in excess of that amount.  Upon these and other facts found by the judge at the trial court, which need not be recited here, the learned trial judge dismissed the writ.

It is insisted that the judgment rendered upon the decision of the special term should be reversed on the ground of alleged erroneous findings of fact by the trial court, but on a careful examination of the evidence we are unable to discover any essential finding of the court that is not supported by the evidence.  This writ was granted under the provisions of chapter 269 of the Laws of 1880, which provides for a review of the assessment, and a reversal of the same in cases therein enumerated.  The petition must set forth either that the assessment is illegal, specifying the ground of the illegality; or is erroneous by reason of overvaluation; or is unequal in that the assessment has been made at a higher proportionate valuation than other real or personal property on the same roll, by the same officers, and that the petitioner is or will be injured by such alleged illegal, erroneous, or unequal as-

sessment. Section 1, c. 269, Laws 1880. The petition in this case makes no claim that the assessment is illegal, but it alleges that it is erroneous by reason of overvaluation; and is unequal in that the assessment has been made at a higher proportionate valuation than other real property on said roll, by said officers, and that the relator will be injured in consequence thereof. Upon the question of overvaluation the relator gave some evidence upon the trial, first, as to the cost of the material and construction, and also a judgment in a proceeding by *certiorari* from the assessment of the same property in 1883, by which it appears that other real estate in the city of Troy was assessed at 33⅓ per cent. only of its value that year, and the property of the relator was assessed at its full value, in which action it was adjudged and determined that the relator's property should be assessed at the same rate as other property, and when so assessed the aggregate should not exceed in that year the sum of $6,000. While this evidence was doubtless competent to be considered by the court as bearing upon the question of real value, it was by no means conclusive upon it, in determining whether or not there was an overvaluation. As was said by the learned trial court, the cost of construction was by no means controlling as to the value of the relator's property in Troy, that was only an integral part of a great system which extended over the entire state, and by itself might be of little value as compared with its value as a part of the entire system. Again, if that evidence was to be considered as controlling, then the other evidence in the judgment roll offered by the relator would be nullified, as that judgment fixed the maximum one-third value at $6,000, which on the reassessment ordered was made $3,900, and which if increased to its real value would, at that rate, amount to $11,-700, the exact amount of the assessment complained of. But we are not called upon, on this appeal, to speculate as to the real value of the relator's property in Troy. The assessors having fixed by the assessment the actual value, and their assessment having been sustained by the judgment of the special term, this court on appeal should not interfere, unless the finding of the special term is clearly against the preponderance of evidence. *People v. Keator*, 36 Hun, 592. This court cannot, from the evidence in the record, discover any such preponderance of evidence, upon the questions of facts submitted to the special term, under the rule laid down in the case above cited, as to justify a reversal of the findings of the same upon the facts on the ground of overvaluation; nor does the evidence in this case justify the court in reversing such judgment on the ground that the relator's property was assessed at a higher proportionate rate than other real property in the same territory, and assessed by the same persons. Indeed there seems to be no evidence in the case upon that subject, as there was no proof giving a comparison of values of other property with that of the relator's for that year. It follows that the judgment must be affirmed unless some erroneous principle was adopted by the court at special term in determining the questions in issue before it at the trial.

In determining the questions before the court at the trial, it was doubtless competent for it to take into account all subjects which bore directly upon the value of the relator's real property in Troy, and upon that subject the cost, earnings, extent of the system of which the part located in Troy was a part, might all be considered by the court; all of these might be considered as elements in the problem. *People v. Keator*, 36 Hun, 594; *People v. Weaver*, 34 Hun, 321; *People v. Pond*, 13 Abb. N. C. 1; *Smith v. Mayor*, 68 N. Y. 552, 555. It does not appear, therefore, that the trial judge violated any rule of law in reaching his conclusion upon the question of value. *People v. Hicks*, 40 Hun, 601, 602; *People v. Weaver*, 36 Hun, 322; *People v. Pond*, 13 Abb. N. C. 1. Neither the actual nor relative value of property assessed can be determined in a case like this with mathematical certainty. Much must depend upon the opinion of assessors in making the assessment, and

upon the opinion of witnesses in proceedings to review the same, and the wide diversity of opinion of witnesses demonstrates that values and equalities of value cannot be reached with absolute accuracy, but can only be approximated. On a *certiorari* from the determination of the assessors, the relator assumes the burden of proof, and must establish the overvaluation, or inequality, of the assessment. This the special term holds the relator has failed to do by proof. The assessment being an official act, the presumption in favor of its correctness must prevail until shown to be erroneous by affirmative proof on the part of the relator. This has not, we think, been done by any preponderance which would justify the interference on this appeal with the findings and determinations of the special term. But aside from the questions of facts raised, and the disposition made of them at the trial, we do not see how the assessment of 1885 can be reviewed on this *certiorari*, unless the relator appeared before the assessors on what is known as "grievance day" and presented its objections to the assessment. This the trial court finds it did not do, and we fully concur in that finding. The only evidence offered by the relator was that of Carter, who was a local agent of the relator in Troy, and he does not pretend to swear that he attended on any "grievance day" before the assessors, or any one of them. He was in the common council chamber at some time, and looked over the assessor's books, but cannot swear that any assessor was present, or what he said. That clearly did not amount to such appearance and objection to the assessment on "grievance day" as is contemplated by statute. Chapter 176 of the Laws of 1851, as amended by chapter 536 of the Laws of 1857, particularly points out the method of proceeding by the assessors on completing the assessment roll to enable parties claiming to be aggrieved to apply for a reduction of their assessment, and the method to be pursued by and before the assessors on such application, and no such appearance on the part of the relator was had, or proceeding taken, as required, to put the assessors on inquiry as to the correctness of the assessment of the relator's property for that year. That being so, it seems well settled that a *certiorari* will not lie, under chapter 269 of the Laws of 1880, where the party claiming relief has failed to apply to the assessors while the assessment roll is under their control, by appearing before the board of assessors on "grievance day," and objecting to the assessment, as prescribed by chapter 536 of Laws of 1857. In the case of *People ex rel. Boston H. R. Co.* v. *Assessors of the Town of Hoosac, etc.*,[1] PECKHAM, J., in delivering the opinion of the court, says: "I cannot think it was ever the intention of the legislature to grant this remedy [writ of *certiorari*] to those who had failed to avail themselves of the other provisions of law, by appearing before the assessors at the legally appointed time for hearing such complaints, and obtaining from that body some judgment upon their claims. * * * It is practically granting an appeal from a judgment by default, where jurisdiction over the person and subject-matter exists, and is at war with all principles upon which courts of review are accustomed to grant relief. Such a departure should be provided for by the legislature in absolutely unmistakable terms." In *People* v. *Commissioners*, 99 N. Y. 257, 1 N. E. Rep. 773, the court says: "The case made by the relator does not entitle it to relief under chapter 269 of Laws of 1880. The assessment was regular. The relator did not avail himself of the opportunity to apply for a correction of the assessment, eitl.er on the ground of overvalue or irregularity. The act of 1880 gives a remedy by *certiorari* to review and correct an illegal, excessive, or unequal assessment. But it would, we think, be an unwarrantable construction of the statute to permit a party, complaining of an assessment, to lie by without availing himself of the opportunity to remedy his grievance by application to the commissioners, under the statute of 1859."

---

[1] Not reported.

The statute of 1859 referred to in the above opinion applies to the commissioners of taxes in New York city, and invests them with substantially the same powers as those conferred on assessors by the act of 1857, and provides for relief for overassessment by application of the aggrieved party in substantially the same manner, so that the principle involved in the decision of that case applies to the case at bar, and is an authority in this case. The case of *People* v. *Assessors*, 7 N. Y. Supp. 101, cited by the relator on this point, is not an authority against this position; nor is that of *Paddock* v. *Lewis*. In the latter case the assessment was against personal property, and the relator was a non-resident, and that fact had been established in a previous controversy. Held that, under the circumstances of that case, his failure to appear did not prevent him from applying for the writ of *certiorari*. 9 N. Y. Supp. 333. It would therefore follow for this reason that the *certiorari* would not, in this case, lie to review the action of the assessors for the year 1885. The writ of *certiorari* was therefore properly quashed at the special term. The judgment must be affirmed, with costs and disbursements.

LEARNED, P. J. In *People* v. *Commissioners*, 99 N. Y. 254, 1 N. E. Rep. 773, the court speak of the unwarrantable construction which in certain cases would "permit a party to arrest the collection of the tax by a proceeding under the act of 1880." The court seem not to have noticed that by section 2 of that act (chapter 269) the *certiorari* shall not stay the proceedings of the assessors or other officers. Therefore the *certiorari* would not arrest the collection of the tax. There is nothing in that act which limits the right of review to the cases where the person claiming to be aggrieved has appeared before the assessors. I am not willing to hold that the courts should insert such a limitation. This *certiorari* is not a mere review of evidence given originally before the assessors. It is a hearing upon new evidence. Section 4. Therefore it cannot be necessary to the right to this relief that the aggrieved party shall have given the evidence before the assessors on which he will rely under this *certiorari*. He may give more and different evidence, and the proceeding is a rehearing *de novo*. I cannot see, therefore, what advantage is gained by requiring the aggrieved person to say to the assessors on grievance day: "I am assessed too much, and I request a reduction." If he were limited on this *certiorari* to the evidence which he had given before the assessors the case would be different. But he is not. What good then for him to make a formal application on grievance day? The duty of the assessors to assess equally is well known to them, and they are supposed to do this in the assessment before they give notice. I cannot, therefore, hold that no one can ever maintain this *certiorari* who has not appeared before the assessors. *People* v. *Assessors*, 7 N. Y. Supp. 101; *Paddock* v. *Lewis*, 9 N. Y. Supp. 333. At the same time it may be reasonable for the court sometimes to insist that they ought not to be burdened with these cases, unless relief has been refused by the assessors. But the application to the assessors, as I think, is not necessary to the jurisdiction of the court. I concur in the result of the opinions of my Brother MAYHAM in these three cases of the trial.